The defendant, Alabama Power Company, appeals from an order of the circuit court denying its alternative motions for a judgment notwithstanding the verdict or a new trial. We affirm.
The plaintiff owns residential property on Lake Neely-Henry, a lake impounded by a hydroelectric dam owned and operated by defendant. Defendant maintains a 110 ft. power pole on plaintiff's lot. The instant action arose because the easement for defendant's pole describes, not plaintiff's lot but fifty adjacent acres. As revealed by the record, this discrepancy came about in the following manner:
In 1965, while Neely-Henry Dam was under construction, the defendant began purchasing all the property which would eventually form the lake bed and began acquiring easements for the relocation of power poles. Alabama Development Company, a real estate company, owned some property along the proposed shoreline of the lake in Section 21, Township 12 South, Range 6 East, in Etowah County.
On May 15, 1965, defendant acquired a power pole easement from Leslie King, President of Alabama Development Company, on land described as fifty acres in the W 1/2 of the NW 1/4 of Section 21. Defendant constructed a power pole on the lot shortly thereafter. However, defendant contends that the description of the land upon which the pole is located is erroneous in that the easement was intended to be taken on fifty acres in the W 1/2 of the SW 1/4 of Section 21.
Plaintiff's lot lies in the tract for which defendant contends the easement was intended. In 1968, plaintiff succeeded King as president of Alabama Development Company, and in 1976 he purchased his lot from the company. During the construction of a home on the lot, plaintiff discovered that defendant's easement did not describe his property and requested that the pole be relocated. Defendant refused.
Plaintiff then instituted this action for damages for trespass and for ejectment. Defendant counterclaimed for reformation of the description in the easement and for an easement by condemnation on the grounds of equitable estoppel. During the pendency of the suit, the property was sold to Annette Cummans, and she was joined as a plaintiff. *Page 853 
After a jury trial, a verdict was returned for plaintiffs. Nominal damages for trespass were awarded, $2,000 to Gielles and $100 condemnation damages were awarded to Cummans. Defendant appealed upon denial of its motion for a judgment notwithstanding the verdict or alternatively a new trial.
 I
Defendant's principal contention is that the evidence, as a matter of law, conclusively established equitable estoppel and the trial court therefore erred to reversal in allowing this issue to go to the jury. We disagree.
Where an entity with the power to appropriate land under the doctrine of eminent domain appropriates land improperly, the owner may nevertheless be estopped from recovering damages for trespass or maintaining an action in ejectment if: (1) the entity has entered the land and constructed its improvement; and (2) the owner knows of the improvement; but (3) allows large sums of money to be expended on the improvement.Montgomery v. Alabama Power Co., 250 Ala. 441, 34 So.2d 573
(1948).
It is a question for the jury whether the facts adequately establish estoppel. Unless only one reasonable inference can be drawn from the evidence, the question may not be taken from the jury. Humphrey v. Boschung, 287 Ala. 600, 253 So.2d 769 (1971).
In this regard defendant submits that it was entitled to a directed verdict. Specifically, defendant maintains the jury could only reach the conclusion that King had knowledge that the pole was located on the subject property because of the uncontroverted testimony of its right of way agent, Garner, who stated that King visited the property before the pole was placed.
Although we agree that the jury had only the testimony of defendant's agent on the issue of whether King knew the pole was on the subject tract, it was entitled to give little or no probative value to such testimony by virtue of the discrediting features contained therein. See, e.g., Ryan v. Wohl, South Co., 241 Ala. 123, 1 So.2d 292 (1941). This is especially so, where as here, the testimony is that of a person interested in the outcome of the litigation. See, e.g., Morgan Plan Co. v.Beverly, 35 Ala. App. 563, 51 So.2d 177, cert. dismissed,255 Ala. 235, 51 So.2d 179 (1951).
On direct examination, Garner stated that because the events had occurred a long time ago, he could not remember the route he and King took to view the property nor the substance of any conversation with King regarding King's plans for the tract. On cross-examination, Garner admitted that he handled a great many relocations and that this power line was not the only improvement with which he was concerned at the time.
More importantly, and contrary to defendant's contention, Garner stated that he showed King the "general vicinity" as opposed to the exact position on which the pole would be placed. In addition, Garner testified that at the time, the parcel and surrounding land was swampy, completely unimproved and undergoing extensive earthmoving operations. His testimony further indicates that even the eventual shoreline of the lake was uncertain at the time.
Given this testimony together with the fact that Alabama Development Company gave defendant an easement on land adjacent to and just north of the subject property (land which is now the edge of the lake), it was within the province of the jury to conclude that King could not be charged with knowledge of the exact location of the pole or that it would be placed on the subject property.
To this court, and without Garner's testimony, the jury was left with a single fact with which to charge King with the requisite knowledge, i.e., Alabama Development Company's ownership of the land. As to this we observe that the company owned a great deal of land on, under and around the lake and in the proximity of the *Page 854 
tract in question, and therefore, it was further within the province of the jury to conclude that under these facts, the company (King) was unaware that the pole was placed on the instant parcel as opposed to another location.
For these reasons the issue of whether King had the requisite knowledge that the pole was located on the instant property sufficient to give rise to an estoppel was properly presented to and resolved against the defendant by the jury.
 II
Defendant next contends that Alabama Development Company is the only party entitled to money damages. We disagree.
Defendant relies upon authority which holds that subsequent grantees have no right of action where the original owner isbarred from bringing an action for trespass or ejectment under the doctrine of equitable estoppel. Alabama Great So. R. Co. v.Randle, 215 Ala. 535, 112 So. 112 (1927); Mobile W. Ry. Co.v. Fowl River Lumber Co., 152 Ala. 320, 44 So. 471 (1907). Where, as here, the jury determines that equitable estoppel does not apply against the original owner, subsequent grantees such as these plaintiffs may properly recover damages for trespass. Montgomery, supra.
 III
Defendant additionally contends that plaintiff's trespass action is barred by the six year statute of limitations, §6-2-34 (2), Code of Ala. 1975, or alternatively by laches. We disagree.
A structure maintained on another's property is a continuing trespass. 87 C.J.S. Trespass § 13 (1954). A continuing trespass creates successive causes of action, and damages may be recovered for the trespass occurring within the statutory period. 13 Ala. Digest Limitation of Actions § 55 (6); 54 C.J.S.Limitations of Actions § 169 (1948). Since the damages at issue here are attributable to a period within six years of, or subsequent to, the filing of the complaint, plaintiff's claim is not time barred.
Regarding laches, we note that a plaintiff's claim is not barred unless he has knowledge of the facts which entitle him to relief and thereafter manifests a want of diligence in asserting his rights. Cotney v. Eason, 269 Ala. 354,113 So.2d 512 (1959). We find no basis for applying laches in the instant case.
Plaintiff Gielle purchased his lot from Alabama Development Company in July, 1976. A title search revealed no recorded easement for the power pole situated on the lot. Plaintiff, therefore, requested that it be relocated. Upon defendant's refusal, plaintiff filed suit in September, 1976. From these facts, we find no undue delay on plaintiff's part.
Whether Gielle, who succeeded King as president of Alabama Development Company in 1968, failed to exercise due diligence by not discovering defendant's lack of a recorded easement prior to 1976 was a question of fact for the jury. It is not clear from the record that defendant ever properly presented this question to the jury, and in any event, we find scant evidence from which to conclude that Gielle should have been on notice that defendant did not have a proper easement.
 IV
Finally, defendant contends that the trial court committed reversible error in its charges to the jury on damages.
We will not set out in detail the trial court's charges. In essence, the court charged the jury that if it found that defendant was a trespasser, plaintiffs would be entitled to nominal damages regardless of whether they had suffered an injury. We find no error here. It is the established law that nominal damages are recoverable for trespass even where no injury is suffered. Dawsey v. Newton, 244 Ala. 661,15 So.2d 271 (1943).
In addition, we note that the defendant failed to object to the court's final charge as to damages, and therefore such error *Page 855 
cannot be the basis for an assignment of error on appeal. ARCP 51.
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.