# Garrett v. Sewell.

*Trover and Trespass for Removal of Partition Fence.*

1. *Partition fences; repair or removal by either party.*—A fence erected on the line between two co-terminous proprietors, or recognized by them as being on the line, though not so in fact, is a partition fence, and belongs to them as tenants in common (Code, § 1370); either may repair it, and may lawfully enter on the land of the other for that purpose; but, if he destroys it, or removes it on his own land, he is liable in trover at the suit of the other tenant, and also in trespass if he entered on the land of the other in making the removal.

2. *Same; who may maintain trover or trespass.*—If the plaintiff's land was rented out at the time the fence was removed by the defendant, he can not maintain either trover or trespass, which lies only in favor of one who has either the actual possession or the immediate right of possession; but, if only the cleared land was rented out, while the fence which was removed extended through the wood-land beyond, he has a right of action for the latter part.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. JOHN B. TALLY.

This action was brought by Mrs. Sarah C. Garrett against M. N. Sewell, to recover damages for the removal of a par-

tition fence, and was commenced on the 15th ·February, 1886. The court charged the jury, on request, to find for the defendant if they believed the evidence, and refused a similar charge asked by the plaintiff; and these rulings, with others, are assigned as error.

J. L. BURNETT, for appellant, cited Code, §§ 942, 1370; *Shipman v. Baxter,* 21 Ala. 456; *Blackburn v. Baker,* 7 Por.; 284; *Henry v. Jones,* 28 Ala. 385; *McGhee v. Peterson,* 57 Ala. 334; *Brown v. Cockerell,* 33 Ala. 38; 1 Chitty's Plead. 212, 263; 6 Wait's Act. & Def. 81; 2 Waterman on Trespass, 388; *Symonds v. Harris,* 51 Maine, 14.

MATTHEWS & WHITESIDE, and C. DANIEL, *contra,* cited *Boswell v. Carlisle,* 70 Ala. 244; *Morris v. Robinson,* 80 Ala. 291; *Dunlap v. Steele,* 80 Ala. 291; 6 Wait's A. & D. 76; 2 Waterman on Trespass, 362, 392–3, 948–9.

CLOPTON, J.—Appellant brings the suit to recover damages for the removal of the fence dividing her land from that of defendant. The complaint contained three counts: The first in trover, for the conversion of the rails; the second substantially alleges that defendant wrongfully and maliciously removed a fence inclosing in part the plantation of plaintiff, which was a partition fence between plaintiff and defendant, and had been agreed upon and recognized as such by plaintiff and defendant, and those under whom he claims, for more than ten years, and that its removal left the plantation of plaintiff exposed to depredation by stock; and the third, in terms, claims damages "for a trespass committed by the defendant," and makes, substantially, the same averments as the second, except that the words *wrongfully* and *maliciously,* and the averment as to exposure to stock, are omitted. ∶

The following facts are uncontroverted: In 1858, or 1859, it was agreed between J. R. Lowe, who owned the land on the west side, and W. M. Randle, who owned the land on the east side of the fence, that it should be recognized as the line between them, and as a partition fence. After occupying the land on the east side for about ten years, Randle sold it to Savage, and Savage to Lowe, so that Lowe became the owner of the land on both sides of the fence. On a division of his real estate between his heirs, in 1873, or '74, after the death of Lowe, the land on the west side was allotted to plaintiff, and that on the east side to Mrs. Aubrey, each of whom entered into possession, treating and

recognizing the fence as the dividing line, and as a partition fence. · In 1879, Mrs. Aubrey sold the land allotted to her to defendant, who moved the fence in 1885, about six feet on to his land. The evidence clearly shows that the fence was treated and recognized as on the line, and a partition fence, for ten years before Lowe purchased from Savage— the respective owners claiming to the fence—and that no complaint was made that the fence was not on the line until claimed by defendant in the latter part of 1884, or early in 1885.

Partition fences, as defined by statute, are fences erected on the line between lands owned by different owners. Code, § 1375. Whether it is on the true line, according to survey, or on a line agreed on by the parties, is immaterial. In *Henry v. Jones*, 28 Ala. 385, it was held, "If a part of the fence was entirely on the land of one of the proprietors, still, if it was recognized as a partition fence by both parties, it would confer the same rights as if it were in fact so. The recognition would operate as an estoppel *en pais*, and neither could complain of any act done by the other which would have been lawful had the fence been on the division line." Though a survey may demonstrate that the fence is not on the true dividing line, neither party loses any rights to the same. Section 942 of the Code provides : "When a re-survey of land is made by a county surveyor, for the purpose of straightening section lines, or any sub-division lines of sections, the owners of fences built on the original lines shall not lose their rights to the same, when the re-survey changes the original lines, and places the fence on the land of others." Under the provision of section 1370 of the Code, to the effect that partition fences between improved lands are to be erected and repaired at the joint expense of the occupants, which has been the law since the act of 1807, such fences become the joint property of the adjoining proprietors.—*Walker v. Watrous*, 8 Ala. 493.

Whenever one tenant in common does an unlawful act, whereby his co-tenant is injured, the law affords an appropriate remedy ; he may bring trover or trespass against his co-tenant, when the thing in common is destroyed, or the conversion is equivalent to an exclusion of the right of the tenant suing.—*Allen v. Harper*, 26 Ala. 686. The removal of the fence from the original dividing line, on the land of the defendant, and its appropriation to his exclusive use, was tantamount to the destruction of the thing in common. *Symonds v. Harris*, 51 Me. 14; 2 Waterman on Trespass, § 947. Either owner may lawfully enter upon the land of

[DeLoach Mills Manufacturing Co. v. Middlebrooks.]

the other for the purpose of repairing a partition fence ; but, if the entry is made for the purpose of destroying the fence, such entry constitutes a trespass.—*Henry v. Jones, supra.*

· But defendant contends that, notwithstanding the evidence may clearly show the facts as above stated, under the complaint—the first count being in trover, and the others in trespass—the affirmative charge in favor of defendant was rightfully given. The contention is based on the ground, that in order to maintain trover, or trespass, plaintiff must have possession, or the right of immediate possession, at the time of the injury complained of. The *gist* of the action of trespass being the injury to the possession, plaintiff can not recover on his general property, if, at the time of the injury, the right of present possession and enjoyment has been conferred on another. So, also, to maintain trover, the plaintiff must have either possession or the right of immediate possession. The affirmative charge in favor of defendant assumes that plaintiff had neither. While there is evidence that a tenant of plaintiff was in possession at the time of the removal of the fence, there is also evidence tending to show that only the *cleared* land had been rented, with permission to the tenant to get fire-wood off the woodland, which was inclosed by the fence. On this state of the evidence, the court could not assume, as matter of law, that plaintiff neither had possession, nor the right of immediate possession to the wood-land. On the contrary, if the uncontradicted evidence be believed, plaintiff is entitled to a verdict under the first count, and under the others, if it be shown that in order to remove the fence defendant entered on the land of plaintiff.

No question arises as to the measure of recovery.

Reversed and remanded.